UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMR MOHSEN,

                Plaintiff,

      v.

MORGAN STANLEY & CO. INC.,
DEAN WITTER, and JOHN WELKER,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 23, 2013

**MEMORANDUM
OPINION & ORDER**

11 Civ. 6751 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Amr Mohsen brings this action alleging Racketeering Influenced and Corrupt Organizations Act (RICO) claims, fraud, breach of contract, and other common law claims against Defendants Morgan Stanley & Co., Inc. and John Welker.[1]  Defendants have moved to transfer this action to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).  (Dkt. Nos. 21, 64)  For the reasons stated below, Defendants' motion will be granted.

## BACKGROUND

### I.    THE CALIFORNIA ACTION

        On September 14, 2009, Plaintiff filed a complaint in California state court (the "California complaint") substantially similar to the Complaint filed with this Court (the "New York complaint").  (Kleinick Decl. (Dkt. No. 22), Ex. 1 ("CA Cmplt."))  In both complaints, Plaintiff alleges that Defendants fraudulently caused him to sell stock from his brokerage

---

[1]  All claims against Defendant Dean Witter were dismissed in a June 21, 2013 order.  (Dkt. No. 56)

accounts in September 2001 at a significant loss, and that they breached a contract with him by overcharging him for commissions.  (CA Cmplt. ¶¶ 8-11; Cmplt. (Dkt. No. 1) ¶¶ 12-21)

In the California complaint – filed in Superior Court, Orange County – Plaintiff asserts that venue is proper in Orange County, California, because "Defendants reside or have places of business in Orange County where many of the acts and transactions giving rise to the causes of action asserted herein took place."  (CA Cmplt. ¶ 2)  He further asserts that although he is currently serving a sentence in federal prison in Safford, Arizona, he "is a citizen of the State of Cal[ifornia] with a California driver['s] license," and maintains a residence in San Jose, California.  Plaintiff further pleads that he "intends to return [and] live in California upon his release."  (Id. ¶ 3)  Plaintiff also alleges that "Morgan Stanley Dean Witter is a firm for financial and securit[ies] management with offices [in] . . . Irvine, California, . . ." and that "John Welker is First Vice President [and] Br[anch] Manager at Morgan Stanley Dean Witter with offices [in] . . . Irvine, California. . . ."  (Id. ¶¶ 4-5)  Plaintiff also states that he "opened several stock brokerage accounts on or about December 2000 with the firm of Morgan Stanley Dean Witter having offices at 8001 Irvine Center Drive, Suite 800, Irvine, California . . . [and that] Welker was the account executive in charge of these accounts."  (Id. ¶ 6)

On April 1, 2011, Morgan Stanley removed the California action to the United States District Court for the Central District of California.  (Mohsen v. Morgan Stanley Dean Witter, No. 8:11-cv-00495-CJC-MLG (C.D. Cal.) ("C.D. Cal. Dkt.") (Dkt. No. 1))  Morgan Stanley then filed a motion to dismiss.  On May 31, 2011, the Honorable Cormac J. Carney granted Morgan Stanley's motion to dismiss – which was unopposed – finding that Plaintiff's claims "suffer[ed] from many of the defects outlined in Morgan Stanley's motion to dismiss, particularly with respect to statutes of limitations. . . ."  (Kleinick Decl., Ex. 2, at 1-2)  Plaintiff

2

was given leave to amend, but did not do so within the time limit set by the court.  Accordingly, Judge Carney dismissed the action without prejudice.  (Id. at 3)  Judge Carney later rejected an amended complaint filed by Plaintiff, and denied Plaintiff's motion for relief from judgment. (C.D. Cal. Dkt. Nos. 18, 19)

On August 24, 2011, Plaintiff filed a notice of appeal.  (Mohsen v. Morgan Stanley Dean Witter, No. 11-56468 (9th Cir.) (Dkt. No. 1))  On November 15, 2011, the Ninth Circuit denied Plaintiff's motion to proceed in forma pauperis, finding that "the appeal [was] frivolous."  (Kleinick Decl., Ex. 3, at 1-2)  On January 6, 2012, the Ninth Circuit dismissed Plaintiff's appeal, because he had not paid the filing fee.  (Id. at 3)  Plaintiff subsequently filed a petition for a writ of certiorari with the United States Supreme Court.  That petition was denied on May 29, 2012.  (Id., Ex. 4)

## II.  **THE NEW YORK ACTION**

On September 8, 2011, while his appeal was pending before the Ninth Circuit, Plaintiff filed the instant action.  On December 7, 2011, Chief Judge Preska dismissed this action sua sponte, holding that the "Complaint is duplicative of the amended complaint that Plaintiff [attempted to] file[] in the Central District of California because the complaints share the same parties, facts, claims for relief[,] and exhibits."  (Dkt. No. 5 at 4)  Judge Preska stated that she was "wary of what appears to be Plaintiff's attempts to bypass the appellate court ruling by filing a duplicative suit here. . . ."  (Id.)  She further noted that "[b]ecause the United States District Court for the Central District of California already has familiarity with the facts in this action and a substantial part of the events giving rise to Plaintiff's claims took place in California, it may be in the interest of justice for that court to hear this action."  (Id. at 4 n.1 (citing 28 U.S.C. § 1404))

On March 5, 2012, Plaintiff sought leave to re-file his complaint in this District. (Dkt. No. 7)  Plaintiff argued that, although the dismissal of his California action was "effectively a final dismissal due to the expiration of the statutes of limitations on some of the causes of action pursuant to California [law,]" "some of the causes of action . . . have not expired pursuant to New York [law]. . . ."  (Feb. 29, 2012 Pltf. Decl. (Dkt. No. 3) ¶¶ 5, 7)  Judge Preska construed Plaintiff's request as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b).  On April 20, 2012, she granted that motion, because the Ninth Circuit had dismissed Plaintiff's appeal.  (Dkt. No. 8)

As noted above, the California complaint and the New York complaint "share the same parties, facts, claims for relief[,] and exhibits.  The only significant differences are claims for why New York is the proper venue for this action."  (Dkt. No. 5 at 3)  In the New York complaint, Plaintiff pleads that "[v]enue is proper in this judicial district under 28 U.S.C. § 1391(a) because a defendant's corporate headquarter[s] resides in this judicial district, and the parties had agreed that the governing law relating to disputes would be the law of the State of New York. . . ."  (Cmplt. ¶ 11)  Plaintiff further pleads that he is a citizen of the State of Arizona and that Welker is a citizen of the "State of Dakota."  (Id. ¶¶ 1-2, 4)

On January 28, 2013, Morgan Stanley moved to transfer this action to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 21)  Plaintiff filed an opposition to Morgan Stanley's motion on March 21, 2013.  (Dkt. No. 37)  Morgan Stanley filed a reply on April 10, 2013.[2]  (Dkt. No. 43)  On August 13, 2013, Welker joined Morgan Stanley's transfer motion.[3]  (Dkt. No. 64)

---

[2]  On May 20, 2013, Plaintiff filed a motion for leave to file a sur-reply in further opposition to Morgan Stanley's transfer motion.  (Dkt. No. 52)  Plaintiff argues that Morgan Stanley's reply brief "raised new arguments and new factual allegations," citing approximately twelve new cases

## DISCUSSION

### I.   LEGAL STANDARD

Title 28, United States Code, § 1404(a) states that "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "The purpose of § 1404(a) is 'to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  In re Stillwater Min. Co. Sec. Litig., No. 02 Civ. 2806 (DC), 2003 WL 21087953, at *2 (S.D.N.Y. May 12, 2003) (quoting Trehern v. OMI Corp., No. 98 Civ. 0242 (RWS), 1999 WL 47303, at *1 (S.D.N.Y.  Feb. 1, 1999) (internal quotations omitted)).

---

not discussed in Plaintiff's opposition or in Morgan Stanley's opening brief.  (Id. at 2)  To the contrary, Morgan Stanley's reply brief addresses Plaintiff's arguments regarding the factors that must be considered in resolving a transfer motion.  Defendant asserts no new facts, raises no new legal arguments, and properly cites new cases only in response to Plaintiff's arguments.  See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 226-27 (2d Cir. 2000) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party.") (internal quotation omitted).  Plaintiff has not "demonstrate[d] to the [C]ourt that papers to which [he] seeks to file a reply raise new issues which are material to the disposition of the question before the [C]ourt."  United States v. Int'l Bus. Machs. Corp., 66 F.R.D. 383, 384 (S.D.N.Y. 1975).  Accordingly, Plaintiff's motion for leave to file a sur-reply will be denied.

[3]   After receiving numerous extensions of time, Plaintiff served Defendant Welker on July 22, 2013 (Dkt. No. 58), after Morgan Stanley's transfer motion was fully briefed.  In an August 13, 2013 submission, Welker asks to join Morgan Stanley's transfer motion.  (Dkt. No. 64)  Welker does not present any new facts or arguments.  Accordingly, there is no need to permit Plaintiff to respond, and Welker's application to join in Morgan Stanley's motion will be granted.  See Int'l Bus. Machs. Corp., 66 F.R.D. at 384.

Defendants have also filed motions to dismiss.  (Dkt. Nos. 26, 59)  Because this Court concludes that this action should be transferred to the Central District of California, it will not consider these motions, or Plaintiff's motion to strike Kleinick's Declaration in Support of Morgan Stanley's Motion to Dismiss (Dkt. No. 36), or Plaintiff's motion to file a sur-reply in opposition to Morgan Stanley's motion to dismiss.  (Dkt. No. 53)

Absent consent, "[a] motion to transfer venue requires a two-part inquiry:  first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate."  Fuji Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (internal quotations omitted).  "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).

"[T]he party requesting transfer carries the burden of making out a strong case for transfer, and, to prevail, must make a clear and convincing showing that transfer is proper."  Bukhari v. Deloitte & Touche LLP, No. 12 Civ. 4290 (PAE), 2012 WL 5904815, at *2 (S.D.N.Y. Nov. 26, 2012) (citing N.Y. Mar. & Gen. Ins. Co. v. Lafarge N. A., Inc., 599 F.3d 102, 112 (2d Cir. 2010)) (internal quotations and citations omitted).  In deciding a motion to transfer, a court may consider material outside of the pleadings.  See Citibank, N.A. v. Affinity Processing Corp., 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) ("The defendant must support [a Section 1404(a)] motion with affidavits and other materials outside the pleadings."); Huang v. Napolitano, 721 F. Supp. 2d 46, 47 n.2 (D.D.C. 2010) ("In reviewing a motion to transfer under 28 U.S.C. § 1404(a), a court may consider undisputed facts outside the pleadings."); Ancient Sun Nutrition, Inc. v. Oregon Algae, LLC, No. 10 Civ. 140, 2010 WL 3719503, at *1 (W.D.N.C. Sept. 17, 2010) ("Unlike a Rule 12(b) motion, which is limited to facts contained in the Complaint, a motion to transfer allows for review of materials submitted outside the pleadings."); Andrade v. Chase Home Fin., LLC, No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005) ("When deciding a motion to transfer venue, the court must accept as true all

of plaintiffs' well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant.").

   "It is well-established in the Second Circuit that superseded pleadings, while not judicial admissions per se, may be introduced as evidence and considered an admission." Dweck v. Pacificorp Capital, Inc., No. 91 Civ. 2095 (MJL), 1998 WL 88742, at *7 (S.D.N.Y. Mar. 2, 1998) (citing United States v. McKeon, 738 F.2d 26, 31 (2d Cir. 1984)). "'When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made . . ., and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party . . . .'" Id. (quoting Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 32 F.2d 195, 198 (2d Cir. 1929)); see also Savino v. Computer Credit, Inc., 960 F. Supp. 599, 601 (E.D.N.Y. 1997) (noting that "a superseded pleading in a civil case may constitute an admission."); Tiana Corp. v. Hartley, 99 F.Supp. 670, 672 (S.D.N.Y. 1951) (despite fact that defendant amended answer, allegation in original answer, although not a conclusive judicial admission, "is nevertheless competent evidence of the facts stated"). If the admission was made "'without adequate information, that goes to its weight, not to its admissibility.'" Dweck, 1998 WL 88742, at *7 (quoting Kunglig Jarnvagsstyrelsen, 32 F.2d at 198). "[A] party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." McKeon, 738 F.2d at 31.

## II.    ANALYSIS

### A.    Whether This Action Might Have Been
###       Brought in the Central District of California

An action "might have been brought" in another forum if "subject matter jurisdiction, personal jurisdiction, and venue would have . . . been proper in the transferee court at the time the action was filed." Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *3 (S.D.N.Y. July 28, 2009).

The Central District of California would have subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff brings claims arising under federal law.  (Cmplt. ¶ 8)

Personal jurisdiction exists over both Morgan Stanley and Welker under California's long-arm statute, which, in part, allows for the exercise of specific jurisdiction over a defendant.[4] See Barantsevich v. VTB Bank, No. CV 12-08993 MMM AJWX, 2013 WL 3188178, at *10 (C.D. Cal. May 29, 2013).  A court can exercise specific jurisdiction over a defendant if:  (1) "the defendant did some act or consummated some transaction in California by which he purposefully availed himself of the privilege of conducting activities in the state or that he undertook an act that was purposely directed at the state;" (2) the "plaintiff's claims arise out of such activities;" and (3) "the exercise of jurisdiction is reasonable." Id.

Here, Plaintiff pleaded in his California complaint that he opened the brokerage accounts at the heart of this dispute at Morgan Stanley's offices in Irvine, California, and that

---

[4] "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))).

Welker – who was the First Vice President and Branch Manager at that office – was the account executive in charge of his accounts.  (CA Cmplt. ¶ 6)  Plaintiff further pleaded that "many of the acts and transactions giving rise to the causes of action asserted herein took place" in Orange County, California. (Id. ¶ 2)  Under these circumstances, the Central District of California would have specific personal jurisdiction over Defendants.[5]

Finally, venue would be proper in the Central District of California because, according to Plaintiff, "a substantial part of the events . . . giving rise to the claim occurred" there.  28 U.S.C. § 1391(b)(2); (CA Cmplt. ¶ 2 (pleading that "many of the acts and transactions giving rise to the causes of action asserted herein took place" in Orange County, California)). Accordingly, this action might have been brought in the Central District of California.

### B.  Section 1404(a) Factors

After determining "that the action sought to be transferred is one that 'might have been brought' in the transferee court," a judge must next "determine whether, considering the 'convenience of parties and witnesses' and the 'interest of justice,' a transfer is appropriate." Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) (quoting Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997)).  In making this determination, courts generally consider the following factors:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

---

[5]  The Court takes judicial notice of the fact that the city of Irvine and Orange County are located within the Central District of California.

Berman, 30 F. Supp. 2d at 657 (citations omitted).  "There is no rigid formula for balancing these factors and no single one is determinative."  Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citing S & S Mach. Corp. v. Gen. Motors Corp., No. 93 Civ. 3237, 1994 WL 529867, at *7 (S.D.N.Y. Sept. 28, 1994)).  "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion."  Id. (quoting First City Nat. Bank & Tr. Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)).

### 1.    Convenience of Witnesses and Ability to Compel Their Attendance

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer."  Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).  The convenience of non-party witnesses is accorded more weight than that of party witnesses.  Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citing Nieves v. Am. Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1988)).  In addition, the transfer analysis "requires a consideration of the court's power to compel attendance of unwilling witnesses, as a district court only can subpoena witnesses within the district or within 100 miles of the district."  Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) (citing Fed. R. Civ. P. 45(b)(2)).

Here, the parties have not identified any non-party witnesses with relevant knowledge.  (Morgan Stanley Br. (Dkt. No. 24) at 10; Pltf. Opp. Br. (Dkt. No. 37) at 16) "Because parties can compel the testimony of their own employees without the need for subpoena, and because neither plaintiff[] nor defendant[s] indicate that any non-party witnesses will be called to testify, or that if they are called they will be unwilling to testify, [these] factor[s] ha[ve] no impact on the [transfer] analysis."  Fuji Photo Film Co., 415 F. Supp. 2d at 375.

### 2.   Location of Relevant Documents

"The location of documents and sources of proof is another consideration in the § 1404(a) calculus.  However, '[t]he location of documents and records 'is not a compelling consideration when records are easily portable.'"  Berger v. Cushman & Wakefield of Pa., Inc., No. 12 Civ. 9224 (JPO), 2013 WL 4565256, at *10 (S.D.N.Y. Aug. 28, 2013) (quoting Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006)).  Here, Morgan Stanley asserts that the majority of relevant documents are located in the Central District of California, and that it is not aware that any relevant documents are located in the Southern District of New York.  (Morgan Stanley Br. at 8-9)  Plaintiff asserts, without explanation, that relevant documents are "spread between California and New York."  (Pltf. Decl. (Dkt. No 39) ¶ 3B)  The Court concludes that this factor weighs in favor of transfer.  Because "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents," however, this factor is not entitled to significant weight.  Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).

### 3.   Locus of Operative Facts

"The locus of operative facts is an 'important factor to be considered in deciding where a case should be tried.'"  Age Grp. Ltd. v. Regal Logistics, Corp., No. 06 Civ. 4328 (PKL), 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) (quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1992)).  "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'"  Id. (quoting 800-Flowers, 860 F. Supp. at 134).  "In an action arising out of a contract, the location of the operative facts is 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'"  AGCS Marine Ins. Co. v. Associated Gas

& Oil Co., 775 F. Supp. 2d 640, 648 (S.D.N.Y. 2011) (quoting Oubre v. Clinical Supplies

Mgmt., Inc., No. 05 Civ. 2062, 2005 WL 3077654, at *4 (S.D.N.Y. Nov. 17, 2005)).

       Here, Plaintiff opened the accounts at issue at Defendants' offices in Irvine,

California, where Welker served as First Vice President and branch manager, and managed the

accounts.  (CA Cmplt. ¶ 6)  In the California complaint, Plaintiff further pleaded that "many of

the acts and transactions giving rise to the causes of action asserted . . . took place" in Orange

County, California.  (Id. ¶ 2)

       Plaintiff now asserts that:  (1) he "negotiated the main terms of Morgan Stanley's

Client Account Agreement and other contracts with Defendant John Welker and his supervisors

at the corporate headquarter[s] in the [C]ity of New York[;] . . . ." (2) "[o]n information and

belief, Mr. Welker always consulted with Morgan Stanley's corporate headquarter[s] staff on

most relevant matters related to [his] claims[;] . . ." and (3) "[o]n information and belief, some of

[his] injuries were in California where [he] resided, however[,] most of [his] injuries were in

New York, where the majority of [his] accounts were maintained, [his] securities were kept in

the custody of Morgan Stanley's corporate headquarter[s] as its principal place of business, and

the actual securities transactions took place."  (Pltf. Decl. ¶ 3; see also Pltf. Opp. Br. at 15-16)

       Assuming arguendo that Morgan Stanley employees in New York City were

involved in the negotiation of Plaintiff's agreement with Morgan Stanley,[6] the locus of operative

facts remains in the Central District of California.  Plaintiff's claims stem from alleged

misconduct by Welker – a bad faith margin call – during the performance of the contract in

California, not from the initial negotiation of the agreement.  More specifically, Plaintiff alleges

that

---

[6] The agreements Plaintiff attaches to the Complaint are form contracts that are not modified in
any way.  (Cmplt., Exs. A, B)

> [t]o realize and capitalize on Defendants' scheme after the September 11, 2001
> United States terrorist attacks, Defendants made a bad faith, unfair dealing, and
> extortious margin call threatening to bounce two of Plaintiff's checks for
> $125,000 each for alleged inadequate margin coverage unless Plaintiff ratified
> Defendants' plan to sell over $12 million dollars of Plaintiff's 9/11-devalued
> stock.

(See Cmplt. ¶ 15)  Plaintiff goes on to allege that he relied on Defendants' misrepresentations in

consenting to the sale of his securities, which permitted Morgan Stanley and Welker "to make

substantial commissions." (Id. at ¶¶ 16-19)  Under these circumstances, what matters is the

locale where the alleged fraud took place; not where the underlying contract was negotiated.  See

Ravenwoods Inv. Co., L.P. v. Bishop Capital Corp., No. 04 Civ. 9266 (KMK), 2005 WL

236440, at *6 (S.D.N.Y. Feb. 1, 2005) (holding that in securities fraud action, "[t]he trading and

holding of stock in New York is not . . . a significant contact with the operative facts of this

action[,]" and that "'[m]isrepresentations and omissions are deemed to "occur" in the district

where they are transmitted or withheld'") (quoting Purcell Graham, Inc. v. Nat'l Bank of Detroit,

No. 93 Civ. 8786, 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994)) (emphasis in original).

Finally, "[i]n cases involving economic harm, [the] place [where injury is sustained] is normally

the state of plaintiff's residence."  Solano v. Shearson Lehman Hutton, Inc., No. 90 Civ. 2122

(JFK), 1990 WL 180174, at *5 (S.D.N.Y. Nov. 13, 1990).

Accordingly, the Court concludes that the locus of operative facts is in the Central

District of California.

### 4.      Convenience and Relative Means of the Parties

Morgan Stanley asserts that the Central District of California would be a more

convenient location for the parties.  According to Morgan Stanley, because Plaintiff's investment

relationship with Morgan Stanley was created and performed through its offices in Orange

County, California, the majority of its employee witnesses are likely to be located there.[7]

(Morgan Stanley Br. at 8-9, 12)  In addition, Plaintiff is now incarcerated in Arizona (Cmplt. ¶ 1;

CA Cmplt. ¶ 3), which is far closer to the Central District of California than to the Southern

District of New York.  Furthermore, Plaintiff has pleaded that he maintains a residence in San

Jose, California, and that "[h]e intends to return [and] live in California upon his release."  (CA

Cmplt. ¶ 3)

      The Court concludes that this factor favors transfer.[8]  See Herbert Ltd. P'ship, 325

F. Supp. at 288 (transferring action to Northern District of California where, "[o]n the whole, the

Court concludes that more witnesses with more material testimony reside in California than in

New York").

      **5.**      **Plaintiff's Choice of Forum**

      Ordinarily, "[a] plaintiff's choice of forum 'is entitled to significant consideration

and will not be disturbed unless other factors weigh strongly in favor of transfer.'"  Hershman v.

UnumProvident Corp., 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009) (quoting Royal & Sunalliance,

167 F. Supp. 2d at 576); see also DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir.

2002).  "'[A] plaintiff's choice of forum is[, however,] given less weight where the case's

operative facts have little connection with the chosen forum.'"  Ivy Soc'y Sports Grp., LLC,

---

[7]  Plaintiff argues that Morgan Stanley has not identified the witnesses it intends to call.  (Pltf. Opp. Br. at 12-13, 15-16)  However, "a specific showing is required only when the movant seeks a transfer solely 'on account of the convenience of witnesses.' . . . [Where a party] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal."  Beckerman v. Heiman, No. 05 Civ. 5234 (BSJ) (GWG), 2006 WL 1663034 at *5 (S.D.N.Y. June 16, 2006) (quoting Connors v. Lexington Ins. Co., 666 F.Supp. 434, 455 (E.D.N.Y. 1987)).

[8]  The "relative means" factor is neutral here, given Plaintiff's incarceration and inability to travel to either California or New York.  If Plaintiff is released during the pendency of this case – given his intention to reside in California – it would presumably be less expensive for him to litigate this matter in the Central District of California rather than in New York.

2009 WL 2252116, at *9 (quoting 800-Flowers, 860 F.Supp. at 134).  Moreover, where, as here,

a plaintiff has filed suit outside of his home forum, a court may consider that fact in determining

the amount of deference owed to plaintiff's choice of forum:  "the more such a decision is

'dictated by reasons that the law recognizes as valid, the greater the deference that will be given

to' it; the more it appears the decision is 'motivated by forum shopping reasons,' the less

deference will be accorded to it."  Hershman, 658 F. Supp. 2d at 601 (quoting Iragorri v. United

Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001)).

       Here, Plaintiff's choice of forum is entitled to little weight, because it is obvious

that his decision to re-file this action in New York – after stripping out all references to

California from his original complaint – was the product of forum-shopping; the locus of

operative facts is in the Central District of California; and this District is not Plaintiff's home

forum.[9]

### 6.    The Forum's Familiarity With The Governing Law, and Judicial Economy and Trial Efficiency

       New York law governs the parties' agreement.  (See Cmplt., Ex. A, at 6)

Nevertheless, "'[t]his Court has routinely held that the "governing law" factor is to be accorded

---

[9]  To the extent Plaintiff argues that he re-filed in New York in order to obtain the benefit of New York's longer statute of limitations (see Pltf. Opp. Br. at 1), that strategy was misguided.  See Muto v. CBS Corp., 668 F.3d 53, 59 (2d Cir. 2012) ("'[O]ne of the key policies underlying [New York's "borrowing" statute is] to prevent forum shopping by nonresidents attempting to take advantage of a more favorable statute of limitations in [New York].'" (quoting Portfolio Recovery Assocs., LLC v. King, 14 N.Y.3d 410, 418 (2010))).  "New York law . . . provides that 'when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either:  (1) New York; or (2) the state where the cause of action accrued[,].'"  Muto, 668 F.3d at 57 (quoting Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998) (citing N.Y. C.P.L.R. § 202)).  "New York law locates the cause of action for breach of contract causing financial harm at 'the place of injury,' which 'usually is where the plaintiff resides and sustains the economic impact of the loss.'"  Id. at 60 (quoting Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 530 (1999)).  Given that Plaintiff was a resident of California at the time of the events in question, his causes of action likely accrued there, and would be subject to the applicable California statute of limitations.

little weight on a motion to transfer venue . . . because federal courts are deemed capable of applying the substantive law of other states.'" Ivy Soc'y Sports Grp., 2009 WL 2252116, at *8 (quoting Prudential Sec. Inc. v. Norcom Development, Inc., No. 97 Civ. 6308 (DC), 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998)).

Finally, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." Williams v. City of N.Y., No. 03 Civ. 5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006).  Here, the Central District of California has already considered Plaintiff's action in the context of ruling on Morgan Stanley's motion to dismiss.  Accordingly, the judicial economy factor weighs in favor of transfer.

*      *      *      *

The factors that this Court must consider in conducting a Section 1404(a) analysis either favor transfer or are neutral.  Given that the locus of operative facts, the parties' convenience, the location of relevant documents, and the interests of judicial economy all favor transfer, Defendants' transfer motion will be granted.

<strong><u>CONCLUSION</u></strong>

For the reasons stated above, Defendant Morgan Stanley's motion to transfer venue to the United States District Court for the Central District of California (Dkt. No. 21), and Defendant Welker's application to join in Morgan Stanley's motion (Dkt. No. 64), are GRANTED.  Plaintiff's motion for leave to file a sur-reply in opposition to Morgan Stanley's motion to transfer is DENIED.  (Dkt. No. 52)

Defendants' motions to dismiss (Dkt. Nos. 26, 59), and Plaintiff's motion to strike (Dkt. No. 36) and motion for leave to file a sur-reply in opposition to Morgan Stanley's motion to dismiss (Dkt. No. 53), will be decided by the court in the Central District of California.

The Clerk of Court is respectfully requested to transfer this case to the United States District Court for the Central District of California.

Dated: New York, New York
      September 23, 2013

SO ORDERED.

Paul G. Gardephe
United States District Judge