UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMR MOHSEN,

                Plaintiff,

v.

MORGAN STANLEY & CO. INC.,
DEAN WITTER, and JOHN WELKER,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/15/14

**MEMORANDUM
OPINION & ORDER**

11 Civ. 6751 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    Pro se Plaintiff Amr Mohsen brings this action alleging violations of the Racketeering Influenced and Corrupt Organizations (RICO) Act, fraud, breach of contract, and other common law claims against Defendants Morgan Stanley & Co., Inc. and John Welker.[1] In a September 23, 2013 order, this Court granted Defendants' motion to transfer this action to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 67) Plaintiff has moved for reconsideration of that decision. For the reasons stated below, Plaintiff's motion will be denied.

## BACKGROUND

### I. THE CALIFORNIA ACTION

    On September 14, 2009, Plaintiff filed a complaint in California state court (the "California Complaint") that is substantially similar to the Complaint in the instant action (the "New York Complaint"). (Kleinick Decl. (Dkt. No. 22), Ex. 1 ("CA Cmplt.")) In both complaints, Plaintiff alleges that Defendants fraudulently caused him to sell stock from his

---

[1] All claims against Defendant Dean Witter were previously dismissed. (Dkt. No. 56)

brokerage accounts in September 2001 at a significant loss, and that they breached a contract with him by overcharging him for commissions. (CA Cmplt. ¶¶ 8-11; Cmplt. (Dkt. No. 1) ¶¶ 12-21)

In the California Complaint – filed in Superior Court, Orange County – Plaintiff asserts that venue is proper in Orange County, California, because "Defendants reside or have places of business in Orange County where many of the acts and transactions giving rise to the causes of action asserted herein took place." (CA Cmplt. ¶ 2) Plaintiff further asserts that although he is currently serving a sentence in federal prison in Safford, Arizona, he "is [a] citizen of the State of Cal[ifornia] with a California driver['s] license," and maintains a residence in San Jose, California. Plaintiff further pleads that he "intends to return [and] live in California upon his release." (Id. ¶ 3) Plaintiff also alleges that "Morgan Stanley Dean Witter is a firm for financial and securit[ies] management with offices [in] . . . Irvine, California," and that "John Welker is First Vice President [and] Br[anch] Manager at Morgan Stanley Dean Witter with offices [in] . . . Irvine, California. . . ." (Id. ¶¶ 4-5) Plaintiff states that he "opened several stock brokerage accounts on or about December 2000 with the firm of Morgan Stanley Dean Witter having offices at 8001 Irvine Center Drive, Suite 800, Irvine, California . . . [and that] Welker was the account executive in charge of these accounts." (Id. ¶ 6)

On April 1, 2011, Morgan Stanley removed the California action to the United States District Court for the Central District of California. (Mohsen v. Morgan Stanley Dean Witter, No. 8:11-cv-00495-CJC-MLG (C.D. Cal.) ("C.D. Cal. Dkt.") (Dkt. No. 1)) Morgan Stanley then moved to dismiss the California Complaint. On May 31, 2011, the Honorable Cormac J. Carney granted Morgan Stanley's motion to dismiss – which was unopposed – finding that Plaintiff's claims "suffer[ed] from many of the defects outlined in Morgan Stanley's motion

2

to dismiss, particularly with respect to statutes of limitations. . . ." (Kleinick Decl. (Dkt. No. 22), Ex. 2 at 1-2) Plaintiff was granted leave to amend, but did not do so within the time period set by the court. Accordingly, Judge Carney dismissed the action without prejudice. (Id., Ex. 2 at 3) Judge Carney later rejected an amended complaint filed by Plaintiff, and denied Plaintiff's motion for relief from judgment. (C.D. Cal. Dkt. Nos. 18, 19)

On August 24, 2011, Plaintiff filed a notice of appeal. (Mohsen v. Morgan Stanley Dean Witter, No. 11-56468 (9th Cir.) (Dkt. No. 1)) On November 15, 2011, the Ninth Circuit denied Plaintiff's motion to proceed in forma pauperis, finding that Mohsen's "appeal [was] frivolous." (Kleinick Decl. (Dkt. No. 22), Ex. 3 at 1-2) On January 6, 2012, the Ninth Circuit dismissed Plaintiff's appeal, because he had not paid the filing fee. (Id., Ex. 3 at 3) Plaintiff subsequently filed a petition for a writ of certiorari with the United States Supreme Court. That petition was denied on May 29, 2012. (Id., Ex. 4)

## II.  THE NEW YORK ACTION

On September 8, 2011, while his appeal was pending before the Ninth Circuit, Plaintiff filed the instant action. On December 7, 2011, Chief Judge Preska dismissed the action sua sponte, finding that the "Complaint is duplicative of the amended complaint that Plaintiff [attempted to] file[] in the Central District of California because the complaints share the same parties, facts, claims for relief and exhibits." (Dec. 7, 2011 Order (Dkt. No. 5) at 4) Judge Preska stated that she was "wary of what appears to be Plaintiff's attempts to bypass an appellate court ruling by filing a duplicative suit here. . . ." (Id.) She further noted that "[b]ecause the United States District Court for the Central District of California already has familiarity with the facts in this action and a substantial part of the events giving rise to Plaintiff's claims took place

in California, it may be in the interest of justice for that court to hear this action." (Id. at 4 n.1 (citing 28 U.S.C. § 1404))

On March 5, 2012, Plaintiff sought leave to re-file his complaint in this District. (Dkt. No. 7)  Plaintiff argued that although the dismissal of his California action was "effectively a final dismissal due to the expiration of the statutes of limitations on some of the causes of action pursuant to California [law,]" "some of the causes of action . . . have not expired pursuant to New York [law]. . . ." (Feb. 29, 2012 Pltf. Decl. (Dkt. No. 7) ¶¶ 5, 7)  Judge Preska construed Plaintiff's request as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b).  (See Apr. 20, 2012 Order (Dkt. No. 8))  On April 20, 2012, Judge Preska granted that motion, because the Ninth Circuit had dismissed Mohsen's appeal.  (Id.)

As noted above, the California complaint and the New York complaint "share the same parties, facts, claims for relief and exhibits.  The only significant differences are claims for why New York is the proper venue for the action." (Dec. 7, 2011 Order (Dkt. No. 5) at 3)  In the New York complaint, Plaintiff pleads that "[v]enue is proper in this judicial district under 28 U.S.C. § 1391(a) because a defendant's corporate headquarter[s] resides in this judicial district, and the parties had agreed that the governing law relating to disputes would be the law of the State of New York. . . ." (Cmplt. (Dkt. No. 1) ¶ 11)  Plaintiff further pleads that he is a citizen of the State of Arizona and that Welker is a citizen of the "State of Dakota."  (Id. ¶ 1, 4)

## III. TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA

On January 28, 2013, Morgan Stanley moved to transfer this action to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 21)  On August 13, 2013, Welker joined Morgan Stanley's motion.  (Dkt. No. 64)

In a September 23, 2013 order, this Court granted Defendants' motion and transferred the action to the Central District of California. (Dkt. No. 67) In granting the motion, the court undertook "a two-part inquiry: first, [it considered] whether the action to be transferred might have been brought in the transferee court[,] and second, whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate [pursuant to 28 U.S.C. § 1404(a)]." Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (internal quotations omitted).

Under the first prong of this analysis – whether the action might have been brought in another forum – this Court concluded that this action could have been brought in the Central District of California, because that court would have subject matter jurisdiction and personal jurisdiction over both Defendants, and venue would be proper in that district. (Sept. 23, 2013 Order (Dkt. No. 67) at 8-9) As to the second prong, this Court concluded that the Section 1404(a) factors weigh in favor of a California forum, because the Central District of California is a more convenient forum for the parties, the relevant documents are in that district, the locus of operative facts is in that district, and the Central District of California has already considered Plaintiff's claims. (Id. at 11-16)

## IV.   MOTION FOR RECONSIDERATION

On September 23, 2013, this action was electronically transferred from the Southern District of New York to the Central District of California.

In an October 22, 2013 letter, Plaintiff moved for leave to file a motion for reconsideration of this Court's September 23, 2013 order, alleging that he did not learn about the transfer order until approximately October 22, 2013. (Dkt. No. 71) Concluding that the Clerk of the Court had transferred this action to the Central District of California before the seven-day

5

waiting period required by Local Civil Rule 83.1 had expired, and that Plaintiff had not had an opportunity to timely seek relief from the September 23, 2013 order, this Court found that it had jurisdiction to consider Plaintiff's motion, and granted Plaintiff leave to file a motion for reconsideration. (Dkt. No. 72)

## DISCUSSION

### I.  LEGAL STANDARD

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005)

Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Cv. 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))) (second alteration in original). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Id.

Mohsen claims that reconsideration of this Court's September 23, 2013 order is warranted in light of "overlooked controlling decisions and factual matters" and newly available facts. (Pltf. Br. (Dkt. No. 75) at 2)

## II. "OVERLOOKED" FACTS

Mohsen contends that – in granting Defendants' transfer motion – this Court "overlooked" that (1) his Client Account Agreement with Morgan Stanley is governed by New York law and – according to Mohsen – provides that New York's statute of limitations applies to his claims; (2) Mohsen, as a pro se prisoner, experienced "undue hardship" in litigating his earlier action in the Central District of California; (3) Morgan Stanley's corporate headquarters is in New York; (4) the alleged misrepresentations underlying Mohsen's claims were made by Morgan Stanley employees in New York; and (5) he no longer owns a residence in California

7

and no longer plans to live in California after he is released.[2] (Pltf. Br. (Dkt. No. 75) at 6-8) According to Mohsen, when these facts are considered, the Section 1404(a) analysis favors a New York forum.

### A. Choice of Law Provision in the Client Account Agreement

Mohsen alleges that "[t]he Court overlooked the fact . . . that . . . Morgan Stanley's Client Account Agreement is governed by the law of the State of New York without regard to conflict of law provisions in all respects, including but not limited to determination of applicable statutes of limitations and available remedies." (Pltf. Br. (Dkt. No. 75) at 6) According to Mohsen, "irrespective of where the case is tried[,] the New York[ ] statute[] of limitation[s] [is] applicable . . . [h]ence, the New York Action is not the product of forum shopping. . . ." (Id. at 2)

---

[2] Mohsen also repeats several arguments that he previously made in opposing Defendants' transfer motion. For example, Mohsen argues that "the disparity in economic resources between Morgan Stanley and Plaintiff should favor maintaining the action in Plaintiff's choice of this venue, especially [because] he has been financially weakened by Defendants' alleged breaches and fraudulent conduct[ ]." (Pltf. Br. (Dkt. No. 75) at 10) However, Mohsen did not explain in his original briefing, and does not explain now, why the relative means factor favors his choice of venue, given that he is incarcerated and cannot travel to either venue. (See Sept. 23, 2013 Order (Dkt. No. 67) at 14 & n.8) Moreover, since the filing of this motion, Mohsen has been transferred to the Federal Correctional Institution at Lompoc, California, which is located within the Central District of California. See July 24, 2014 Pltf. Ltr. (Dkt. No. 93) (indicating change of address to FCI-Lompoc))

Mohsen also argues that "the employees in New York who kept Plaintiff's documents, and were responsible for lo[ ]sing them, should be subpoenaed as witnesses," and that California may not have the power to compel their attendance. (See Pltf. Reply Br. (Dkt. No. 89) at 6-7) This argument was previously considered and rejected. (Sept. 23, 2013 (Dkt. No. 67) at 10)

Because "[a] motion for reconsideration may not be . . . used as a vehicle for relitigating issues already decided by the Court," neither Mohsen's relative means argument nor his New York witnesses argument provides a basis for reconsideration. Davidson, 172 F. Supp. 2d at 461.

8

Contrary to Mohsen's assertion, however, this Court did not overlook the applicable governing law in granting the transfer motion. Indeed, this Court cited the Client Account Agreement and acknowledged that "New York law governs the parties' agreement." (See Sept. 23, 2013 Order (Dkt. No. 67) at 15 (citing Cmplt. (Dkt. No. 1), Ex. A at 6)) The Court also noted, however, that it "'has routinely held that the "governing law" factor is to be accorded little weight on a motion to transfer venue . . . because federal courts are deemed capable of applying the substantive law of other states.'" Id. at 15-16 (quoting Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *8 (S.D.N.Y. July 28, 2009) (citation omitted)); see also Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004) ("A forum's familiarity with the governing law . . . is one of the least important factors in determining a motion to transfer . . . ."). Given that the Court explicitly considered the fact that Mohsen's agreement with Morgan Stanley was governed by New York law, and concluded that this fact did not shift the balance of the Section 1404(a) factors in favor of New York, Plaintiff's contention that this fact was "overlooked" is baseless. See Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 606 (S.D.N.Y. 2012) (denying motion for reconsideration where "the Court squarely considered and addressed . . . the . . . facts that the Plaintiffs contend the Court overlooked").

Mohsen further argues that the Court overlooked the "fact" that New York's statute of limitations applies to his claims under the choice-of-law provisions of his Client Account Agreement. This Court considered the applicable statute of limitations, however, and concluded that "[g]iven that Plaintiff was a resident of California at the time of the events in question, his causes of action likely accrued there, and would be subject to the applicable California statute of limitations," pursuant to the New York borrowing statute, N.Y. C.P.L.R. §

9

202. (See Sept. 13, 2013 Order (Dkt. No. 67) at 15 n.9) Mohsen has not pointed to any facts that cast doubt on that conclusion. (Id.)

Morgan Stanley's Client Account Agreement states that "t[he] Agreement and its enforcement will be governed by the law of the State of New York without regard to conflict of law provisions." (Cmplt. (Dkt. No. 1), Ex. A at 6) "Under New York law, [however,] a choice of law clause is construed as choosing only the applicable substantive law, not the applicable limitation period." Cafferty v. Scotti Bros. Records, Inc., 969 F. Supp. 193, 203 (S.D.N.Y. 1997); see also Ins. Co. of N. Am. v. ABB Power Generation, Inc., 925 F. Supp. 1053, 1059 (S.D.N.Y. 1996) ("Relying on th[e] characterization of statutes of limitations as procedural, New York courts do not apply contractual choice of law clauses when determining what statute of limitations applies. Under New York law, a choice of law clause is construed as choosing only the applicable substantive law. In this case, therefore, . . . [the contractual provision] selecting California law to govern the contract[ ] does not mean that California's statutes of limitations are applicable." (citations omitted)); Portfolio Recovery Assocs., LLC v. King, 14 N.Y.3d 410, 415-16 (2010) ("[T]he Appellate Division properly concluded that the Delaware choice of law clause did not require the application of the Delaware three-year statute of limitations to bar Portfolio's claims. Choice of law provisions typically apply to only substantive issues, and statutes of limitations are considered 'procedural' . . . . There being no express intention in the agreement that Delaware's statute of limitations was to apply to this dispute, the choice of law provision cannot be read to encompass that limitations period.") (internal citations omitted). Accordingly, the choice of law provision governing the Client Account Agreement does not mandate that New York's statute of limitations be applied to Mohsen's claims.

10

To the extent that Mohsen relies on the choice of law clause in the arbitration provisions of the Client Account Agreement, his reliance is misplaced. The agreement states that – in arbitration proceedings – "[t]he law of the State of New York will apply in all respects, including but not limited to determination of [the] applicable statutes of limitation[s] and available remedies." (Cmplt. (Dkt. No. 1), Ex. A at 17) Mohsen is litigating his claims in federal court, however, and not in an arbitration proceeding. Moreover, as this Court observed in its September 23, 2013 order, although the Client Account Agreement is a form contract (Sept. 23, 2013 Order (Dkt. No. 67) at 12 n.6), Mohsen claims states that the arbitration provisions were deleted from the version of the agreement that he signed.[3] (Mohsen Decl. (Dkt. No. 39) ¶ 3) Accordingly, under Mohsen's theory, the agreement's arbitration provisions are irrelevant. In any event, even if these provisions controlled, this Court applied New York's borrowing provision in discussing the applicable statutes of limitations. (See Sept. 13, 2013 Order (Dkt. No. 67) at 15 n.9)

Finally, even if this Court were to somehow conclude that the New York statute of limitations applies to Mohsen's claims, that determination could not "reasonably be expected to alter the conclusion [as to transfer] reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader, 70 F.3d at 257). This Court did not give dispositive weight to the statute of limitations issue, but instead concluded that transfer was appropriate in light of the totality of the Section 1404(a) factors.

---

[3] According to Mohsen, Defendants have represented that the original of the executed Client Account Agreement was lost or destroyed as a result of the September 11, 2001 terrorist attacks on the World Trade Center. (Pltf. Br. (Dkt. No. 75) at 7)

11

### B. "Undue Hardship" in the Central District of California

Mohsen claims that – in granting Defendants' motion to transfer the action to California – "[t]he Court overlooked the fact that Plaintiff experienced 'undue hardship' as a pro se inmate with the District Court for the Central District of California, [with respect to] the recognition of the mailbox rule, the docketing of his motions and briefs, and . . . communication with the Court Clerk Office. . . ." (Pltf. Br. (Dkt. No. 75) at 6-7)

Mohsen made these same arguments in opposing Defendants' transfer motion. At that time, Mohsen argued that the Southern District of New York is a more convenient forum because it "readily recognize[s] the mailbox rule for pro se inmates, and its Pro Se office is properly staffed and has been extremely helpful to him," and "[t]he difficulties which Plaintiff has encountered with the District Court for the Central District of California (the recognition of the mailbox rule, the filing of motions and pleadings according to its local rules, and the communication with the Court Clerk), indicate that its docket may be too congested for pro se inmates." (See Pltf. Opp. Br. (Dkt. No. 37) at 15, 20) In his opposition to Defendants' transfer motion, Mohsen complained that several of his filings in the Central District were rejected as untimely even though – according to him – they were submitted to prison officials prior to the expiration of the relevant filing deadlines. (See Mohsen Decl. (Dkt. No. 39) ¶ 6) Mohsen also complained about (1) delays in the acceptance of his court filings by the Clerk of the Court in the Central District of California; (2) difficulties in obtaining a copy of the Central District of California's Local Rules from the Clerk's Office; and (3) difficulties in communicating with the Clerk's Office about questions related to his case. (See id. ¶ 7)

These arguments are not new and were not overlooked by this Court in granting Defendants' transfer motion. Mohsen discussed these issues at length in opposing Defendants'

12

motion (see Pltf. Opp. Br. (Dkt. No. 37) at 15, 20-21; Mohsen Decl. (Dkt. No. 39) ¶¶ 6-7), and – in the September 23, 2013 order – this Court acknowledged Plaintiff's pro se status and the fact that his filings had been rejected as untimely by the Central District of California. (See Sept. 23, 2013 Order (Dkt. No. 67) at 1, 3) Mohsen's arguments did not and do not justify keeping this action in New York, however.

Mohsen's argument that he will be prejudiced if he is required to litigate in the Central District of California – because that court does not recognize the so-called "mailbox rule" for pro se prisoner filings – is baseless. Under the "mailbox rule," a pro se prisoner's habeas petition is deemed filed "at the time petitioner deliver[s] it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). The Ninth Circuit – which oversees the Central District of California – applies this rule to pro se prisoner court filings generally. See, e.g., Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc (June 24, 2014) ("We assume that Butler turned his [habeas] petition over to prison authorities on the same day he signed it and apply the mailbox rule."); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) ("[T]he Houston mailbox rule applies to § 1983 suits filed by pro se prisoners."); Shabazz v. Parris, No. CV 12-5803-SVW (DFM), 2014 WL 2986485, at *1 n.1 (C.D. Cal. May 27, 2014) ("Plaintiff is entitled to application of the prison 'mailbox rule' . . . . Thus, the Court will deem the filing date of this [civil rights] action as the date that Petitioner signed the complaint."); Walker v. Stanton, No. EDCV 08-24-VAP (OPX), 2008 WL 4401388, at *6 (C.D. Cal. Sept. 2, 2008), aff'd sub nom., Tate v. Stanton, 360 F. App'x 833 (9th Cir. 2009) ("Under the so-called 'prisoner mailbox rule,' court documents submitted by a prisoner proceeding in pro se are considered 'filed' as of the date the prisoner deposits the document with prison authorities for mailing. Here, Tate has

submitted a declaration stating he complied with this Court's Order to file a RICO Case Statement by May 1, 2008, when he gave his RICO Case Statement to a correctional officer on April 30, 2008. . . . Tate's RICO Case Statement should have been considered a timely filing and should not have been stamped 'Received/Returned' on May 2, 2008."). In sum – contrary to Mohsen's claim – the mailbox rule will apply to his court filings in the Central District of California.

Mohsen's argument that this Court overlooked the heavy caseload of the Central District of California and the administrative difficulties he encountered while litigating there is likewise without merit. While "certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor for the Court to consider [on a motion to transfer] and is accorded 'some weight.'" Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 991 (E.D.N.Y. 1991). However, "[j]udicial economy, [including relative docket congestion,] although a relevant consideration, is insufficient on its own to support a transfer motion." In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 407 (S.D.N.Y. 1998).

Here, Mohsen has offered no evidence that the Central District of California docket is more congested than that of the Southern District of New York. Recent statistics suggest that civil cases in the Central District of California generally reach trial more quickly than those in the Southern District of New York.[4]

---

[4] See United States Courts, U.S. District Court Judicial Caseload Profiles, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2014/district-fcms-profiles-march-2014.pdf&page=68 (stating that, as of March 31, 2014, the average time from the filing of a civil case to trial in the Central District of California is 21.1 months, as compared to 31 months in the Southern District of New York) (last visited September 2, 2014).

14

Neither alleged docket congestion in the Central District of California nor Mohsen's preference for the staff in this District's Pro Se Office justifies maintaining this action in New York.

### C. Morgan Stanley's New York Corporate Headquarters

Mohsen argues that "[t]he Court overlooked the fact stated in Plaintiff's Declaration . . . that the Defendants alleged that the Client Account Agre[e]ment signed by Plaintiff with the arbitration clause at p. 17 deleted[ ] was misplaced in Morgan Stanley's corporate headquarter[s] in the city of New York after the 911 events." (Pltf. Br. (Dkt. No. 75) at 7) Mohsen claims that this assertion is significant because it demonstrates "the involvement of Morgan Stanley's staff in the corporate headquarter[s] in the negotiation and execution of Morgan Stanley's Client Agreement." (See id.)

This Court previously considered this argument as well. (See Sept. 23, 2013 Order (Dkt. No. 67) at 12) Indeed, the Court assumed arguendo that Morgan Stanley's employees in New York City were involved in the negotiation of Plaintiff's agreement with Morgan Stanley. This Court nonetheless concluded that "the locus of operative facts remains in the Central District of California." (Id.) Because this Court did not overlook this fact, it provides no basis for reconsideration.

### D. Locus of Alleged Misrepresentations

Mohsen also asserts that "[t]he Court overlooked the facts that the decisions and transmissions of the misrepresentations [that are the] subject of this action . . . could only have originated from Morgan Stanley's administration and legal counsel at its corporate headquarter in New York." (Pltf. Br. (Dkt. No. 75) at 7) He further claims that this Court – in referencing the Client Account Agreement attached to the Complaint, which is an unmodified form contract

15

– did not address Mohsen's assertion that the version of the Client Account Agreement that he signed was modified, and that the last-known location of the modified contract is New York. (Pltf. Reply Br. (Dkt. No. 89) at 3)  According to Mohsen, "[t]he fact that the lost Modified Client Account Agreement was kept in New York with other related documents . . . supports the assertion that Morgan Stanley's staff in . . . New York not only were involved in the negotiations of the Client Account Agreement but also kept control of its execution, including the decisions and transmissions of the misrepresentations [that are the] subject of this action." (Id.)  Mohsen further argues that "[s]uch operative facts in New York are more significant than [the fact that] . . . these misrepresentations [were received] by Defendant Welker and Plaintiff in California." (Id.)  Mohsen contends that, in light of these "overlooked facts," this Court should conclude that the "locus of operative facts" is a neutral factor under Section 1404(a), because "the center of gravity of the activities [that are the] subject of this action are spread between New York and California." (Id.; Pltf. Reply Br. (Dkt. No. 89) at 4)

Mohsen's argument is not persuasive.  As noted above, this Court did, in fact, consider Mohsen's claim that employees in New York were involved in negotiating his contract. (See Sept. 23, 2013 (Dkt. No. 67) at 12-13)  The Court also considered Mohsen's argument that the New York office of Morgan Stanley continued to be involved in the events giving rise to his claims even after he entered into the contract. (See id. at 12 ("Plaintiff . . . asserts that[ ] 'Welker always consulted with Morgan Stanley's corporate headquarter[s] staff on most relevant matters related to [his] claims[;] . . .' and . . . 'most of [his] injuries were in New York, where the majority of [his] accounts were maintained, [his] securities were kept in the custody of Morgan Stanley's corporate headquarter[s] as its principal place of business, and the actual securities transactions took place.'"))  The mere fact that the original of Mohsen's allegedly modified Client Account Agreement may have been maintained in New York does not make it more or less likely that the

misrepresentations that underlie his Complaint were made in New York, however. As observed in the September 23 order, "Plaintiff's claims stem from alleged misconduct by Welker – a bad faith margin call – during the performance of the contract in California." (Id.) In sum, Mohsen has not pointed to any overlooked facts that would alter this Court's conclusion that the locus of operative facts is in California.

### E. Residence in California and Intent to Return to California

In his motion for reconsideration, Mohsen also asserts – for the first time – that the Central District of California is an inappropriate venue because he "no longer maintains a residence in California and his plan where to live after his release has also changed." (Pltf Br. (Dkt. No. 75) at 8) Mohsen asserts that the Court "overlooked" the fact that his allegations in the California Complaint – including that he owns a residence in California and plans to return there when he is released – were made in 2009, and that his circumstances have since changed. (Id.)

This argument comes too late. "Motions for reconsideration 'are not vehicles for taking a second bite at the apple, . . . and [the court] [should] not consider facts not in the record to be facts that the court overlooked.'" See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 842 F. Supp. 2d 682, 716 (S.D.N.Y. 2012) (alterations in original) (quoting Rafter v. Liddle, 288 Fed. App'x 768, 769 (2d Cir. 2008)); see also Christoforou v. Cadman Plaza N., Inc., No. 04 CV 08403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar. 19, 2009) (a party moving for reconsideration "may not 'advance new facts, issues or arguments not previously presented to the Court'" (quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

Mohsen filed his opposition to Defendants' transfer motion on March 14, 2013. (Dkt. No. 36) He has offered no explanation as to why he did not represent at that time that he no longer owns a residence in California and does not plan to return there.

17

In any event, Mohsen is still incarcerated and therefore remains unable to travel. (See Sept. 23, 2013 Order (Dkt. No. 67) at 14 n.8) Moreover, since the filing of this motion, Mohsen has been transferred to FCI-Lompoc, which is located in the Central District of California. (See July 24, 2014 Pltf. Ltr. (Dkt. No. 93)) Accordingly, even assuming that Mohsen does not maintain a residence in California and that he does not intend to return there after his release, transfer to the Central District of California remains appropriate in light of the relevant facts under Section 1404(a).

### III.    "OVERLOOKED" CASE LAW

#### A.    Choice of Law Provision

Mohsen claims that this Court "overlooked" three "controlling decisions" that stand for the proposition that "New York law gives full effect to parties['] 'choice of law provision[s].'" See Pltf. Br. (Dkt. No. 75) at 8 (citing Krock v. Lipsay, 97 F.3d 640 (2d Cir. 1996), Solano v. Shearson Lehman Hutton, Inc., 1990 U.S. Dist. LEXIS 15165 (S.D.N.Y. Nov. 13, 1990), and Ferens v. John Deere Co., 494 U.S. 516 (1990)).

This Court applied the choice of law provision in the Client Account Agreement, however. Indeed, in concluding that "New York law governs the parties' agreement," this Court cited Solano. (Sept. 23, 2013 Order (Dkt. No. 67) at 13, 15 (citing Cmplt. (Dkt. No. 1), Ex. A at 6)) Mohsen's argument that this Court "overlooked" New York law on this point is baseless.[5]

#### B.    Statute of Limitations

Mohsen argues that "[d]ue to [an] inadvertent pagination error [in his brief in opposition to Defendants' transfer motion], . . . the Court may have overlooked the argument that

---

[5] To the extent that Mohsen argues that this Court "overlooked" these cases in concluding that the California statute of limitations would likely apply to his claims, this argument is rejected for the reasons stated above.

18

it would not be in the interest of justice to transfer this action to the Central District of California."[6] (Pltf. Br. (Dkt. No. 75) at 9) In his opposition brief, Mohsen argued that "[i]t would not be in the interest of justice to transfer this litigation to the Central District of California where Plaintiff might be time barred from prosecuting some of his claims." (Pltf. Opp. Br. (Dkt. No. 37) at 18) For this proposition, Mohsen now cites the same two cases he previously cited in opposing Defendants' transfer motion, both of which relate to the accrual of a claim for return of a bank deposit. (Compare id. with Pltf. Br. (Dkt. No. 75) at 9 (both citing Huynh v. Chase Manhattan Bank, 465 F.3d 992, 999-1000 (9th Cir. 2006), and Garcia v. Chase Manhattan Bank, N.A., 735 F.2d 645, 648-49 (2d Cir. 1984))).

Mohsen's statute of limitations arguments were not overlooked. As noted above, this Court discussed the applicability of the New York statute of limitations to Mohsen's claims, and whether that consideration weighed in favor of a New York forum. (See Sept. 23, 2013 Order (Dkt. No. 67) at 15 n.9) The Court concluded that it did not. (See id.) Because Mohsen has not pointed to any controlling decisions that this Court overlooked, reconsideration on this ground is not warranted.

## IV.  NEW EVIDENCE

After this action was transferred to the Central District of California, Judge Carney declined to accept the case as related to the previous California action. (Dkt. No. 77) Judge Carney explained that "[the] [p]roposed related case has been closed, [and] there would not be substantial duplication if heard by a different Judge." (Id. at 2) Mohsen argues that "the recent denial of the 'related case' transfer motion by the Hon. Judge Cormac J. Carney[ ] points

---

[6] Plaintiff claims that pages 18 and 19 of his brief were out of order. (Pltf. Br. (Dkt. No. 75) at 9)

19

out that judicial economy is better served by not transferring the venue." (Pltf. Br. (Dkt. No. 75) at 2) Mohsen claims that this "new evidence" justifies reconsideration. (Id. at 6)

The fact that Judge Carney will not hear this case does not alter this Court's conclusion that transfer to the Central District of California is appropriate. The relevant documents and locus of operative facts remain in the Central District of California, and that district is still a more convenient location for the parties. Having considered only the transfer motion and the instant motion for reconsideration, this Court has no greater knowledge of or familiarity with the underlying claims in this case than the judge to whom this action has been assigned in California.

\* \* \* \*

Because Mohsen has not cited any fact or controlling decision that this Court overlooked in granting Defendants' transfer motion, and has not presented any new and previously unavailable evidence that justifies reconsideration of that decision, his motion for reconsideration will be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for reconsideration is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 75) and to mail a copy of this decision to pro se Plaintiff Amr Mohsen, 92949-011, Federal Correctional Institution (F.C.I. Lompoc), 3600 Guard Road, Lompoc, CA 93436.

Dated: New York, New York
September 15, 2014

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge